```
                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE
```

ARABELA JINHONG,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner
Social Security Administration,

    Defendant.

Case No. C04-2502-JLR-JPD

REPORT AND RECOMMENDATION

Plaintiff Arabela Jinhong proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (the "Commissioner"). The Commissioner denied plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court reverses the ALJ's decision and remands for further administrative proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff is a 58-year old woman with a general equivalency diploma ("GED") and a history of work experience. AR 39. Plaintiff also attended cosmetology school, worked as a cosmetologist, and ultimately became the owner of her own salon, which she operated until

REPORT AND RECOMMENDATION
PAGE -1

1996. AR 57-58, 205, 210. She also has work experience as a cosmetology instructor and a file clerk. AR 57.

Plaintiff filed an application for DIB on January 26, 2002,[1] in which she alleged disability beginning on March 26, 1996. AR 158-68. Plaintiff alleged disability stemming from a right foot fracture, breast cancer, swelling and pain in her arm, and arthritis in her knees. AR 158-67. Her applications were denied initially and upon reconsideration. AR 108-11, 113-15.

An ALJ held a hearing to review plaintiff's application and on September 11, 2004 issued a decision. AR 16-29. Among other things, the ALJ found Ms. Jinhong capable of performing sedentary work and therefore concluded that she was not disabled for purposes of the Social Security Act. AR 28. The Appeals Council denied plaintiff's request for review, making the September 11, 2004, decision of the ALJ the Commissioner's final decision for purposes of judicial review.

Plaintiff timely filed this civil action to challenge the ALJ's September 11, 2004 decision. Dkt. No. 1.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. 405(g); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

---

[1] The ALJ's decision indicates that the application was protectively filed on January 14, 2002. AR 19.

REPORT AND RECOMMENDATION
PAGE -2

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

If the ALJ has committed error, the Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

## EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423 (d)(1)(A). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B); *See also Tacket v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning

of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At step 1, the claimant must establish that she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant establishes that she has not engaged in any substantial gainful activity, the Commissioner proceeds to step 2. At step 2, the claimant must establish that she has one or more medically severe impairments or combination of impairments that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, then she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step 3 to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant who meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step 4 and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. *Id.* If the claimant is not able to perform her past relevant work, the burden shifts to the Commissioner at step 5 to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

DECISION BELOW

On September 11, 2004, the ALJ issued a decision denying plaintiff's request for benefits finding:

. . .

2. The claimant met the disability insured status requirement of the Act on March 26, 1996, the alleged disability onset date, and she had sufficient quarters of coverage to remain insured only through September 30, 1996.

3. The claimant has not engaged in substantial gainful activity since the alleged onset date.

4. During the time relevant to this matter, the claimant was status-post right foot fracture, which was her only severe impairment. The impairment did not meet or equal the criteria of any of the impairments listed in 20 C.F.R. Subpart P, Appendix No. 1.

5. The claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of information contained in the medical reports and other evidence of record.

6. At the time she was last insured, the clamant retained the residual functional capacity to perform sedentary work. The claimant could stand/walk 2 hours in an 8-hour workday and sit for 6 hours in a workday. She could not perform forceful pushing/pulling with her lower right extremity. She could occasionally climb stars, balance, stoop, kneel, and crouch; she could not crawl or climb ladders. She needed to avoid exposure to heights, hazards, temperature extremes, and uneven surfaces.

7. The claimant's impairments and limitations preclude her from returning to any of her past relevant work.

. . .

9. The claimant could perform a full range of sedentary work during the relevant time period, 20 C.F.R. § 404.1569 and rules 201.21 or 201.22 of Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion that the claimant is not disabled.

10. Although the claimant was unable to perform a full range of sedentary work at the time she was last insured, she was capable of other work that exists in substantial numbers, such as small products assembler I, with 2,600 jobs in the local region, 6,000 jobs in the state, and 450,000 jobs nationally. She also had job skills transferable to the occupation of general ledger bookkeeper. Thus, she was not disabled within a framework of the above-cited rules.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date that she was last insured.

AR 27-28.

## ISSUES ON APPEAL

The parties both agree that this case should be remanded due to errors by the ALJ. The

plaintiff requests remand for an immediate award of benefits. Dkt. Nos. 14, 19. The Commissioner concedes that the ALJ erred but requests a remand for further administrative proceedings. Dkt. No. 18. Additionally, the parties disagree as to (1) whether the ALJ erred at step 2 of his analysis by finding plaintiff's obesity and depression to be non-severe; and (2) whether the ALJ erroneously rejected lay-witness testimony from plaintiff's friends.

## DISCUSSION

### A. The ALJ Erred at Step 2 of His Analysis by Finding Plaintiff's Obesity and Depression to be Non-severe.

Plaintiff argues that the ALJ erred by finding her obesity and depression to be non-severe impairments. Dkt. No. 14. She argues that his findings regarding her obesity were contradictory and that he failed to adequately evaluate evidence regarding her depression.[2] Defendant argues that the ALJ "properly accounted" for plaintiff's obesity, regardless of whether he found it to be severe. Dkt. No. 18.

Step 2 of the sequential evaluation process requires ALJs to determine whether the claimant has a severe impairment or combination of impairments that significantly limits their ability to perform basic work activities. 20 C.F.R. § § 404.1520(c), 416.920(c). When impairments consist of no more than a slight abnormality that has only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate. *Smolen*, 80 F.3d at 1290 (internal citations omitted). Hence, step 2 acts as a "*de minimis* screening device to dispose of groundless claims." *Id.*

Like other physical impairments, obesity can constitute a severe impairment, either alone or in combination with other medically determinable impairments, when it "significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p. Because obesity can cause various functional limitations, an ALJ must assess precisely how a

---

[2] Plaintiff relies upon Social Security Ruling 00-3p to support her argument, but that SSR has been superceded by SSR 02-01p.

REPORT AND RECOMMENDATION
PAGE -6

claimant's weight affects their ability to function in the work environment and explain how the obesity limits the claimant's ability to perform work. *Id*.

Here, the ALJ observed that medical evidence throughout the file demonstrated that plaintiff was obese. AR 24. He concluded that "her obesity may have some effect on her other impairments[.]" AR 24. Ultimately, however, he concluded that she was able to function "despite her weight[.]" *Id*. In reaching this decision, the ALJ apparently rejected several opinions from treating physicians Criddle and Anderson that indicated plaintiff's obesity and other impairments severely limited her ability to move and rendered her disabled. AR 24-25; 656, 666.

On remand, the ALJ should reevaluate plaintiff's obesity. The ALJ's assessment of how plaintiff's obesity affected her ability to perform basic work activities is simply not clear. He made no precise findings regarding how plaintiff's weight affected her ability to perform basic work functions. The fact that the parties agree that the ALJ erred in his evaluation of the testimony of Dr. Criddle and Dr. Anderson, which relate in part to plaintiff's obesity, further suggests that plaintiff's obesity was a severe impairment.

Similarly, the ALJ should reevaluate plaintiff's depression. His conclusion with respect to her depression was simply that "[o]verall, the evidence does not support a conclusion that [plaintiff's depression was] a severe mental impairment on and before her date last insured." AR 24. The Commissioner agrees that the ALJ erred in evaluating plaintiff's mental impairments. Dkt. No. 18. Thus, the ALJ should evaluate all of the evidence regarding plaintiff's mental impairments.

B.   <u>The ALJ Should Review Lay-witness Testimony From Plaintiff's Friends in Light of all of the Medical Evidence Before Rejecting it.</u>

Plaintiff argues that the ALJ failed to properly evaluate the written statements of several of her friends. Dkt. No. 14. She argues that the ALJ provided no reasons for rejecting these lay witness statements. *Id*. The Commissioner argues that the ALJ considered the

testimony, but properly found it credible only to the extent it was consistent with the medical evidence. Dkt. No. 18.

In order to determine whether a claimant has an impairment, an ALJ may consider lay witness sources, such as testimony from friends. 20 C.F.R. § § 404.1513(d)(4), 416.913(d)(4). Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence. *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987). It therefore cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). If an ALJ wishes to discount the testimony of a lay witness, he must provide reasons germane to each witness. *Id.* Identifying inconsistencies between such statements and the record when looked at as a whole is sufficient. *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001).

Here, the ALJ was presented with written statements from plaintiff's friends that tended to show the degree of limitations plaintiff experienced on a day-to-day basis. AR 25-26, 237-240. For instance, Carol Carr indicated that the most she saw plaintiff stand since her impairment occurred was a half hour. AR 237. Margaret Heinen and Sharon Swanson offered similar testimony and indicated that plaintiff appeared to be in constant pain. AR 238-40. Ms. Swanson and Ms. Heinen also opined that plaintiff could not work. AR 238.

The ALJ stated that these reports were credible, but only to the extent they were consistent with the medical reports that indicated plaintiff was capable of sedentary work. AR 26. The ALJ's decision provides no basis to determine what was accepted and what was rejected. The conclusory statements in his decision, thus, provide no effective basis for judicial review. The ALJ did not identify any specific inconsistencies between the witness statements and the medical records. On remand, the ALJ will review the lay witness testimony in light of the applicable medical records and specifically identify those parts of the testimony he accepts and those parts that he rejects.

C.   <u>The Case Should be Remanded for Additional Administrative Proceedings</u>.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey*, 298 F.3d at 1076. The Court may credit evidence and remand for an award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77. Here, plaintiff has not demonstrated that an immediate award of benefits is the appropriate remedy. Rather, for the reasons discussed below, the Court shall remand this case for further administrative proceedings.

### 1. The ALJ Failed to Provide Legally Sufficient Reasons For Rejecting Plaintiff's Evidence.

The first criteria necessary for the Court to credit evidence and remand for an immediate award of benefits is that the ALJ must have "failed to provide legally sufficient reasons for rejecting the claimant's evidence[.]" *McCartey*, 298 F.3d at 1076-77. This element is satisfied. Indeed, the Commissioner concedes in her memorandum requesting remand that the ALJ erred in several respects. Dkt. No. 18. Hence, the first criteria is satisfied.

### 2. Outstanding Issues Must Still Be Resolved Before a Disability Disability Determination Can be Made.

Having found that the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's evidence, the Court must assess whether there are any "outstanding issues that must be resolved before a determination of disability can be made[.]" *McCartey*, 298 F.3d at 1076-77. Here, there are a variety of issues that must still be resolved before a disability determination can be made.

For instance, the parties agree that the ALJ erred at step 2 by finding plaintiff's mental impairments non-severe. Upon reconsideration, even if the ALJ finds plaintiff's depression to be a severe impairment, it is not clear precisely what effect it will have on plaintiff's ability to

REPORT AND RECOMMENDATION
PAGE -9

perform other work. Additionally, it does not appear that the ALJ employed the "special technique" to evaluate mental impairments that is required by the regulations. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Hence, questions remain about the extent of plaintiff's mental impairments, as well as their functional and vocational impacts.

The ALJ's flawed RFC analysis also leaves unresolved questions about the extent of plaintiff's ability to work. The parties agree that the ALJ erroneously evaluated the testimony of treating doctors. These opinions provide somewhat inconsistent information as to plaintiff's capabilities. For instance, Dr Fallon opined that plaintiff could perform some sedentary work and noted that she would be ready for employment within about a year of her alleged onset date. AR 349-50. Yet, he also appears to have expressed doubt at her ability to perform at least half time and identified varying degrees of impairments over the course of his treatment of her. *See, e.g.* AR 349-57. This testimony therefore raises questions about the extent of plaintiff's impairments and how long the impairments lasted. These are ambiguities that are best resolved at the administrative level upon remand.

Ambiguities also surround the ALJ's step 5 analysis, particularly regarding what sedentary jobs plaintiff could actually perform and whether conditions at those jobs would adequately accommodate her impairments. The ALJ erroneously concluded that plaintiff could perform the job of small parts assembler, but, as plaintiff points out, that job is categorized as "light" whereas the ALJ determined plaintiff was only capable of sedentary work. The ALJ's failure to explain this discrepancy raises questions about plaintiff's ability to perform that position, as well as other sedentary jobs that the VE might have identified. *See Johnson v. Shalala*, 60 F.3d 1428, 1434-35 (9th Cir. 1995) (indicating that an ALJ may rely on testimony from a VE that conflicts with the Dictionary of Occupational Titles when he provides "persuasive" evidence for doing so); SSR 00-4p. Moreover, although the VE testified that employers would accommodate plaintiff's need to elevate her knee, he supplied no quantitative data on the availability of jobs that might permit such accommodations. AR 103.

Finally, the ALJ concluded that plaintiff had some transferable job skills and was capable of working as a general ledger bookkeeper. AR 27. Although the VE noted that plaintiff had some skills that would "probably" be transferable and that some of them "at least sound[ed] like [skills that could transfer to] bookkeeping clerk[.]" AR 62. Nevertheless, the broad conclusions reached by the ALJ do not appear to be justified by the VE's testimony. *See Pinto v. Massanari,* 249 F.3d 840, 847 (9th Cir. 2001) (noting that the ALJ's reliance on VE testimony without findings left the record deficient for review). Additionally, the ALJ failed to identify the number of general ledger bookkeeper jobs that exist in the national economy.

Finally, there is ambiguity regarding the ALJ's application of the Medical Vocational Guidelines. According to the Guidelines, individuals approaching advanced age[3] who "can no longer perform vocationally relevant past work and have no transferable skills" will ordinarily be found disabled. 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 201.00(g). When a claimant is within a few months of reaching this category and doing so would result in a disability determination, ALJs must not "mechanically apply" the category, but must instead consider all of the evidence to determine whether to apply the older age category. 20 C.F.R. §§ 404.1563(b), 416.963(b).

Here, the ALJ determined that applying the older-age job category was not appropriate because plaintiff's fiftieth birthday was approximately six months after her date last insured. AR 27. Hence, the ALJ was not obliged to apply the older-age category. He noted that plaintiff had "some transferable job skills[,]" which could direct a finding of non-disability. However, if this is the basis for his decision not to apply the older-age category, his findings should be more specific. On remand, the ALJ is directed to address the older-age category issue, and to set forth in greater detail the reasons for adopting the older-age category, or failing to do so.

---

[3]Individuals aged 50 to 54 are considered "approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d).

REPORT AND RECOMMENDATION
PAGE -11

   3.  It is Not Clear From the Record That the ALJ Would
Have to Find Plaintiff Disabled If He Considered
Plaintiff's Evidence.

  Plaintiff argues that if all of her evidence is credited as true, she would have been found disabled. Dkt. Nos. 14, 19. The record, however, does not demonstrate that the ALJ would have had to have found plaintiff disabled if he credited plaintiff's evidence as true. As noted above, there are several ambiguities in Dr. Fallon's testimony. Other medical, vocational, and lay testimony adds further complexity to this disability determination. For instance, Dr. Criddle opined that he believed plaintiff was disabled since March, 1996. AR 676-78. However Dr. Gierei[4] opined that plaintiff would be able to perform sedentary work, an opinion he believed was consistent with Dr. Fallon's records. AR 575-82. Drs. Bernadez-Fu, Flemming, and Quint also opined that she was capable of performing functions consistent with sedentary work. AR 457-63. Dr. Nielsen, the medical expert who testified at the hearing, even testified that plaintiff was capable of light work. AR 100. Hence, even if plaintiff's preferred testimony is credited as true, it is not clear that a finding of disability would be required.

  Moreover, the Court is not required to credit plaintiff's testimony as true. To the contrary, the Court retains the discretion to credit testimony as true and may remand for further administrative proceedings. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)*; see also Dodrill*, 12 F.3d 919 (remanding with instructions for the ALJ to "articulat[e] specific findings for rejecting [the claimant's] pain testimony and the testimony of lay witnesses.") When the Court determines that the ALJ must evaluate certain testimony (or provide adequate reasons for rejecting it), as it has here, remand for further administrative proceedings is appropriate.

  D.  <u>Reopening of Plaintiff's Prior Application</u>

---

[4]This spelling is an approximation. The copy in the record is not clear.

In her reply brief, plaintiff argues that, because the ALJ reopened a prior application when making his decision, the Court should order payment of benefits based on that earlier application. Dkt. No. 19. Alternatively, she argues that if the Court determines to remand, the Court should order the Commissioner to consider the earlier application re-opened on remand. *Id*. The Commissioner agreed at oral argument that plaintiff's January 1999 application should be deemed reopened upon remand and that it should be used to determine any payment of benefits.

## CONCLUSION

For the reasons described above, this case should be remanded for further administrative proceedings, together with the January 1999 application, which is directed to be reopened. Upon remand the ALJ shall correct the deficiencies identified above, with emphasis on the following: (1) re-examine plaintiff's obesity and depression at step 2; (2) reevaluate the medical opinions of Dr. Fallon and Dr. Criddle; (3) reevaluate the adverse credibility determination; and (4) call medical and vocational experts well qualified to evaluate plaintiff's mental and orthopedic impairments. A proposed Order accompanies this Report and Recommendation.

DATED this 27th day of August, 2005.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge